http://www.va.gov/vetapp16/Files4/1630511.txt

Citation Nr: 1630511 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-01 614 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to service connection for a left knee disability.

2. Entitlement to service connection for a right knee disability.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

R. Connally, Associate Counsel

INTRODUCTION

The Veteran, who is the appellant in this case, had service from June 1968 to June 1970.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2008 decision of the Regional Office (RO) in St. Petersburg, Florida.

In May 2012, the Veteran testified at a Board hearing before a Veterans Law Judge who subsequently was unable to participate in the decision. The Board notified the Veteran of this instance in an April 2016 notice letter and requested that he indicate within 30 days whether he wanted a second hearing, in accordance with 38 U.S.C.A. § 7107(c) (West 2014) and 38 C.F.R. § 20.717 (2015). The Veteran's response was received that same month. He indicated that he did not desire to have another Board hearing and requested that his case be decided based on the evidence of record. Additional evidence has been received since the Board hearing that was accompanied by a waiver of RO consideration. See 38 C.F.R. § 20.1304(c) (2015).

The Board previously considered this appeal in June 2015, and remanded these issues for further development in order to clarify prior VA examination opinions. That development was completed, and the case returned to the Board for further appellate review.

FINDINGS OF FACT

1. The Veteran has a current diagnosis for bilateral knee osteoarthritis.
 
 2. The Veteran experienced an injury to the lower extremities during service. 
 
 3. Symptoms of the current bilateral knee disabilities were not chronic in service, were not continuous since service, and were not shown to a compensable degree within one year of service.

CONCLUSIONS OF LAW

1. The criteria to establish service connection for a left knee disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

2. The criteria to establish service connection for a right knee disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Where a Veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, including arthritis of the knees, to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. While the disease need not be diagnosed within the presumptive period, it must be shown-by acceptable lay or medical evidence-that there were characteristic manifestations of the disease to the required degree during that time.

Arthritis is a "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provisions of 38 C.F.R. § 3.303(b) based on "chronic" symptoms in service and "continuous" symptoms since service are applicable to the service connection claim for degenerative joint disease of the bilateral knee. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). With a chronic disease shown as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. For the showing of a chronic disease in service, there is a required combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b). 

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015). The Court has held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. See Gilbert, 1 Vet. App. at 53. The Court has also stated, "It is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.

Service Connection for a Bilateral knee Disability

The Veteran contends that his current bilateral knee disability is related to service. Specifically, he asserts that he injured his knees during service when he was struck by a 500 gallon water blivet that rolled over his lower extremities. See May 2012 Board hearing testimony, 7.

First, the evidence of record demonstrates that the Veteran has a current bilateral knee disability. On VA examination in August 2015, the examiner noted that the Veteran has a diagnosis for osteoarthritis in both knees since approximately 2008. Private treatment records from August 2013 to September 2014 also show a diagnosis for osteoarthritis in both knees. These records also document the Veteran's endorsement regarding onset of knee symptoms beginning approximately 10 years ago (in 2003). Records also reflect a diagnosis of chondromalacia patella. 

Next, service treatment records show that the Veteran received medical care in January 1970 for an injury to the lower extremities when a 500 gallon water blivet rolled over him. The initial service treatment record for this injury notes that the water blivet rolled over the Veteran's pelvic region. According to this initial treatment record, the Veteran reported pain in both hips and difficulty moving his right leg. Radiographic imaging tests of the pelvis were negative and the Veteran was diagnosed with a "contusion to hips" and a lumbar spine strain. The Veteran was given crutches. Another treatment record (two days later) noted that the Veteran was feeling "somewhat better," and was prescribed pain relief medication for muscle aches. Nine days after the initial injury, a service treatment record notes that the Veteran "still [complains] of soreness" in his right inguinal area and was diagnosed with a muscle strain. Five months later, on separation examination in June 1970, the Veteran's lower extremities were noted to be "normal." The Veteran also wrote on his discharge examination that he was "presently in good health" and signed his name underneath this statement and then wrote "Health Records Review." There were no other service treatment records that document a knee injury or any other related issues during service. 

However, an in-service injury alone does not mandate that service connection be granted. The in-service injury must be shown to have caused his current bilateral knee disability, or to have caused chronic or continuous symptoms of a bilateral knee disability to a degree of 10 percent or more within one year of service to be presumed as incurred in-service. 

As arthritis is a chronic disease under 38 C.F.R. § 3.309(a), the Board will consider whether the Veteran had chronic symptoms in service or continuity of symptomatology since service have been shown. 

After a review of the evidence, both lay and medical, the Board finds that the weight of the evidence demonstrates that while the Veteran did experience symptoms of a bilateral knee strain in service it did not exhibit a required combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time to warrant presumptive service connection under 38 C.F.R. § 3.303(b). Furthermore, the weight of the evidence shows that the Veteran's symptoms of a knee disability since service have not been continuous since discharge or within one year thereof to warrant presumptive service connection for a bilateral knee disability. Id.

First, regarding chronic symptoms in service, the Board finds that, although the Veteran was treated for a lower extremity injury in service, he did not experience chronic symptoms of bilateral knee arthritis during service. The evidence shows that the Veteran received treatment for an injury to the hips in January 1970, but x-rays of the pelvis confirmed negative findings. Treatment records that stemmed from the injury do not report any issues with the Veteran's knees. 

The absence of treatment records for either knee during service does not establish chronic symptoms during this time. As such, the Board finds that the Veteran did not experience chronic symptoms of a bilateral knee disability during service. 38 C.F.R. § 3.303(b). Accordingly, in order to establish service connection the Veteran must demonstrate a continuity of symptomatology. 

Next, on the question of continuous symptoms since service, the Board also finds that the weight of the evidence demonstrates that the Veteran did not experience continuous symptoms of a bilateral knee disability after service separation. The Veteran has attested to the absence of symptoms of a bilateral knee disability in service, and that he did not experience bilateral knee symptoms after service separation. In this regard, the Veteran testified before a VLJ in May 2012 and explained that he did not have any symptoms of knee pain immediately after leaving service and did not notice any "trouble" with his knees until "maybe eight to ten years ago." See Board hearing transcript, 8. He also did not recall needing any treatment-by taking over-the-counter medications or otherwise-for his knees or any part of his lower extremities between separation from service and approximately 2003. Id. at 8-10. He said that he first sought treatment for his knees in 2005. Id. at 10. Private treatment records from September 2013 also note the Veteran's endorsement of gradual bilateral knee pain beginning over ten years ago. These initial knee treatments occurred over 35 to 40 years after service separation. The Veteran has not alleged he sought treatment for a bilateral knee disability during this period in between. This multi-year gap between treatments is one factor, among others such as the negative examination at separation, weighing against a finding of continual symptoms since service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for condition can be considered as one factor in resolving a claim). However, the Veteran maintains that his knees were also injured during service when the water blivet rolled over his pelvic region despite the absence of specific documentation in his service treatment records. See Notice of Disagreement, received February 2, 2009.

The Board finds that the Veteran is competent to describe symptoms of knee pain. See Layno v. Brown, 6 Vet. App. 465 (1994). However, the Board finds that the Veteran has not reported continuous symptoms of knee pain since service. Furthermore, the current statements, made in connection with his claim for benefits that maintain knee pain during and since service, are inconsistent with previous statements made during service. See Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995) (holding that credibility can be impeached generally by a showing of interest, bias, inconsistent statements, or, to a certain extent, bad character); Pond v. West, 12 Vet. App. 341, 345 (1999) (although Board must take into consideration the Appellant's statements, it may consider whether self-interest may be a factor in making such statements). 

The record reflects that the Veteran reported pain in his hips and right leg/right inguinal area as a result of this water blivet incident, but he did not report any knee pain. The Board finds that the Veteran's in-service history of symptoms at the time of the injury and at the time of service separation is more contemporaneous to service, and so it is of more probative value than the more recent assertions made many years after service separation. See Harvey v. Brown, 6 Vet. App. 390, 394 (1994) (upholding a Board decision assigning more probative value to a contemporaneous medical record report of cause of a fall than subsequent lay statements asserting different etiology); Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (upholding Board decision giving higher probative value to a contemporaneous letter the veteran wrote during treatment than to his subsequent assertion years later). 

The Board has weighed the Veteran's statements, as expressed throughout this decision, regarding continuity of symptomatology and finds that his current recollections and statements made in connection with these claims for benefits to be of lesser probative value. See Pond, 12 Vet. App. at 341 (although Board must take into consideration the veteran's statements, it may consider whether self-interest may be a factor in making such statements); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). For these reasons, the Board finds that the weight of the evidence is against a finding of continuity of symptomatology after service. 38 C.F.R. § 3.303(b). 

In addition, as shown above, a diagnosis of chondromalacia patella and osteoarthritis was not rendered for almost 38 to 43 years after the Veteran's discharge from service. See August 2008 and September 2013 private treatment records. Degenerative joint disease is diagnosed primarily on clinical findings such as X-rays or specialized testing such as MRI that the Veteran is not competent to conduct or interpret. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (degenerative arthritis established by X-ray findings), Diagnostic Code 5010 (traumatic arthritis established by X-ray findings), Diagnostic Code 5002 (rheumatoid arthritis must be "objectively confirmed by findings" that show limitation of motion). Cf. 38 C.F.R. § 4.66 (indicating the usual way to diagnose arthritis is by X-ray, which is also required to see arthritic changes). 

There are no clinical findings of bilateral knee osteoarthritis until 2013. Additionally, the record does not indicate that the Veteran received treatment for bilateral knee arthritis or that he actually received treatment within the first year following service separation. Therefore, a bilateral knee disability was not shown within the first year of discharge and the presumptions under 38 U.S.C.A. § 1112 and 38 C.F.R. § 3.309 do not apply. As such, the criteria for presumptive service connection have not been met.

Nonetheless, a bilateral knee disability is currently shown and the evidence reflects an in-service event which the Veteran reported resulted in injury to the knees. The next question is whether there is a causal relationship between the current complaints and the in-service injury. After a review of all the evidence, both lay and medical, the Board finds that the weight of the evidence is against a finding of a nexus between the Veteran's current bilateral knee disability and an in-service injury. 

On VA examination in December 2008, the examiner diagnosed chondromalacia of the knees. The Veteran told the examiner that there was "not much going on with it," until the last few months in regard to his knee pain. The examiner noted the Veteran's service treatment records that mention the water blivet incident (as previously described above). The examiner also reported that there were no interval records for any continued knee treatment since the Veteran's discharge from service. After a review of the record and physical examination of the Veteran, the examiner opined that she could not resolve this issue without resorting to mere speculation. Accordingly, without any further rationale for this opinion, this particular VA examination is afforded no probative value.

In June 2012, VA received a medical nexus opinion from the Veteran's private treating physician. The physician described the Veteran's current diagnosis and the symptoms that the Veteran exhibits as a result of this disease. He explained that chondromalacia patella "will sometimes remain clinically silent (cause no symptoms) for many years, whereas in other cases it becomes annoying and obvious early on." The physician noted the Veteran's report that he was severely injured when he was struck by the water blivet that rolled over his lower body and resulted in hospitalization and then crutches for several weeks during his military service. He then opined that "it is at least as likely as not that such an injury would be contributory to his present medical condition since it is well established that chondromalacia patella is more common in those who have experienced previous traumatic knee injuries such as fractures, dislocations, and other injury to the kneecap."

The Veteran received another VA examination in February 2013. The Veteran told the examiner that he could not recall the exact date that he began experiencing symptoms in his knees, but that "ten years ago" he started to have "difficulty climbing steps." The examiner continued the diagnosis for chondromalacia patellae of the bilateral knees. The VA examiner noted that the Veteran's private treatment records from 2005 are silent for any knee issues, and that a May 2005 physical examination that was performed by the same treating physician who drafted the June 2012 medical opinion revealed normal extremities and no musculoskeletal issues. The VA examiner then noted that the first medical report for knee pain that is found in the record (since service) did not occur until August 2008. The assessment at this time was chondromalacia patella. The VA examiner opined that the Veteran's chondromalacia patella was less likely as not related to service. He explained that even though the Veteran did experience trauma to his lower extremities in service, he affirmatively denied any issues with his lower extremities six months later when he was discharged from service. Furthermore, the examiner noted that the Veteran affirmatively denied any issues with his knees between 2005 and August 2008 (the earliest medical treatment of record) when he sought treatment for other medical issues. The examiner opined that "it is far more likely that the Veteran's knee condition, diagnosed in 2008, is a result of factors that occurred during the 38 years post-service, rather than the described injury during service." The examiner noted that the Veteran also experienced a weight gain of 65 pounds between 1970 and 2008 when he was diagnosed with chondromalacia patella. He opined that the "carrying of this extra weight (knee stress/overload) at least as likely as not caused Veteran's current knee condition."

The Veteran received another VA examination in August 2015. The examiner noted a diagnosis for osteoarthritis in both knees since approximately 2008 and that there was no trauma or fractures of either knee found in the record. The Veteran continued to endorse approximate onset of knee pain within the last 10 years. After review of the claims file and physical examination of the Veteran, the examiner opined that the claimed condition is less likely than not related to service, to include the January 1970 water blivet incident. She explained that the service treatment records note an injury to the pelvic region and lumbar spine strain, but exclude any mention of the knees. Furthermore, she noted that there is no history of a claimed knee injury within one year of service discharge. The examiner then explained, "Chondromalacia may not cause any symptoms for many years if it is a slowly progressive age related condition [arthritis], but if it is due to trauma, then it would be secondary to fracture [secondary post traumatic arthritis] that should cause symptoms proximately, not after 35-40 years." She concluded, "Post fracture arthritic changes are symptomatic and show up on imaging within 2-5 years of the trauma. This examiner cannot find a credible scientific/medical basis for the opinions in [the June 2012 private physician's] letter."

The Board recognizes that the record contains competing medical opinions as to the etiology of the Veteran's current bilateral knee disability. As a result, the Board must determine how much weight to afford the opposing opinions. See Guerrieri v. Brown, 4 Vet. App. 467, 471 (1993). The Board may weigh one medical professional's opinion over another, depending on factors such as the reasoning employed by the medical professionals and whether or not, and the extent to which, they reviewed prior evidence. Id. at 470-71 (noting that "The probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusions that the physician reaches.").

The Board must provide adequate reasons and bases if it adopts one medical opinion over another. Owens v. Brown, 7 Vet .App. 429, 433 (1995) (noting that the Board may "favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons and bases"). In assessing evidence such as medical opinions, the failure of the physician to provide a basis for his opinion goes to the weight of the credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998).

The Board finds that the February 2013 and August 2015 VA examination opinions are adequate for evaluation purposes and highly probative. Specifically, during the VA examinations, the examiners reviewed the claims file, interviewed the Veteran, and conducted a physical examination. There is no indication that the VA examiners were not fully aware of the Veteran's past medical history and in-service as well as post-service knee complaints or that he misstated any relevant fact. Moreover, the examiners have the requisite medical expertise to render a medical opinion regarding the etiology of the disability and had sufficient facts and data on which to base their conclusions. As such, the Board accords the VA examination opinions great probative weight. The February 2013 VA examiner also offered an alternative medical explanation for the Veteran's diagnosis and the cause of his current symptoms being due to a 65 pound weight gain over the last three to four decades since service.

Conversely, the Board finds the Veteran's private treating physician's opinion to be of lesser probative value. The private physician did not explain the conflicting findings of the private treatment records between 2005 and 2008 when he personally examined the Veteran and found no objective symptoms of knee joint issues. On the other hand, the August 2015 VA examiner explained the discrepancies found in the private physician's opinion regarding the onset of knee symptoms and the effects of chondromalacia patella as it pertains to the Veteran's claims. The August 2015 VA examiner explained that if the Veteran did experience trauma to his knees during service, then his current osteoarthritis "would be secondary to fracture [secondary post traumatic arthritis] that should cause symptoms proximately, not after 35-40 years." However, the Board notes that the Veteran testified at his Board hearing that he did not have chronic or continuous symptoms since this bilateral knee injury in-service until approximately 2003 or 2004. Furthermore, the August 2015 VA examiner stated, "Post fracture arthritic changes are symptomatic and show up on imaging within 2-5 years of the trauma," but, in addition to the Veteran's testimony of non-chronic or continuous symptoms since service, the evidence of record shows that osteoarthritis was not diagnosed until 2008. 

In this decision, the Board has considered the Veteran's contentions and lay statements as they pertain to a nexus between current complaints and service. Lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 
492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan, 451 F.3d at 1331 (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Some medical disorders require specialized training for a determination as to diagnosis and causation; therefore, such issues are not susceptible of lay opinions on etiology, and a veteran's statements therein cannot be accepted as competent medical evidence. See Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) (stating that it "is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer").

As a lay person, the Veteran does not have the requisite medical knowledge, training, or experience to be able to render a competent medical opinion regarding the cause of the medically complex disorder of bilateral knee arthritis. See Kahana, 24 Vet. App. at 437 (recognizing ACL injury is a medically complex disorder that required a medical opinion to diagnose and to relate to service). Arthritis is a medically complex disease process because of its multiple etiologies, requires specialized testing to diagnosis properly and sometimes involves symptomatology that overlaps with other disorders. Woehlaert, 21 Vet. App. at 462 (holding that rheumatic fever is not a condition capable of lay diagnosis). The etiology of the Veteran's current bilateral knee disability is a complex medical etiological question involving internal and unseen system processes unobservable by the Veteran. 

Based on the above, the Board does not find the Veteran competent to provide evidence of an etiological nexus between his current bilateral knee disability and service. As such, there is no competent evidence of record from the Veteran suggesting a causal relationship between the bilateral knee disability and service; therefore, the Board attaches greater probative weight to the VA examination opinions than to the private medical opinion or Veteran's lay statements.

For the reasons discussed above, the weight of the evidence demonstrates that the Veteran's current bilateral knee disability was not incurred in service, and may not be presumed to have been incurred therein. Therefore, the claim for service connection for a bilateral knee disability must be denied. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

VCAA notice should be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The RO provided a letter to the Veteran in May 2008, prior to the initial adjudication of the service connection claims on appeal. The letter notified the Veteran of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

The notice requirements of the VCAA apply to all elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. The Veteran was provided with such notice by the May 2008 letter, including the type of evidence necessary to establish a disability rating and effective dates.

Next, VA has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). Here, service records have been obtained as have records of VA and private treatment. Based on the foregoing, the Board finds that VA has met its duty to assist with regard to records development.

The Veteran was afforded three VA examinations with respect to his claim in December 2008, February 2013, and August 2015. During the examinations, the VA examiners conducted a physical examination of the Veteran with diagnostic testing, were provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid a factual foundation for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met regarding the matters on appeal. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).

The Veteran appeared at a hearing before a Veterans Law Judge in May 2012. In Bryant v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) essentially requires that any Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. 23 Vet. App. 488 (2010). These requirements consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Id. During the hearing, the Veterans Law Judge did not explicitly note the elements of the claim that were lacking to support the Veteran's claim. However, the Veteran demonstrated actual knowledge of this information and presented testimony discussing his symptoms and regarding why he believed a higher rating was warranted. See Dalton v. Nicholson, 21 Vet. App. 23 (explaining that actual knowledge is established by statements or actions by the claimant or the claimant's representative that demonstrate an awareness of what was necessary to substantiate his or her claim). In light of his answers, the Veteran is not shown to be prejudiced on this basis. During the hearing, the Veterans Law Judge sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claim. Accordingly, the Veteran is not shown to be prejudiced on this basis. Moreover, the Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. The actions by the undersigned satisfy the obligations imposed by 38 C.F.R. § 3.103.

All necessary development has been accomplished; therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). In addition to the evidence discussed above, the Veteran's statements in support of the claim are also of record. The Board has carefully considered such statements, and concludes that no available outstanding evidence has been identified. Additionally, the Board has reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. For these reasons, the Board finds that the duties to notify and assist the Veteran in the development of this claim have been met, so that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

As noted in the Introduction, the Board previously remanded this claim in June 2015. The Board instructed the AOJ to obtain additional treatments records previously identified by the Veteran, obtain another VA examination, and to then readjudicate the claims on appeal with consideration of the additional evidence associated with the claims folder. Since that time, VA issued a supplemental statement of the case that considered the additional, new evidence. As a result, the Board finds substantial compliance with its previous remand instructions, and has properly continued with the foregoing decision. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).

ORDER

Service connection for a left knee disability is denied.

Service connection for a right knee disability is denied.

____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs